UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| RONALD B. PALMER, ET AL. | § | |
| | § | |
| v. | § | CIVIL NO. 4:20-CV-688-SDJ |
| | § | |
| DEREK WILLIAM KIRKWOOD, ET AL. | § | |
| | § | |

**MEMORANDUM ADOPTING IN PART AND MODIFYING IN PART REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Plaintiffs Ronald Palmer and Sherry Palmer, proceeding *pro se*, have sued Defendants Derek William Kirkwood, James Stephen Hulse, Jerry Garner, the City of Corinth, and Joey Hutchinson, alleging various claims arising out of an incident that occurred at Plaintiffs' home in September 2018. (Dkt. #91). Each defendant separately moved to dismiss Plaintiffs' claims. (Dkt. #109, #110, #111, #112, #113). Plaintiffs subsequently filed a "Motion Challenging the Court's Jurisdiction to Provide Immunity as Relief Because Said Relief is Non-Justiciable Plea to the Court's Jurisdiction" (the "Jurisdictional Motion"). (Dkt. #134).

Before the Court is the Magistrate Judge's Report and Recommendation (the "Report"), (Dkt. #153), which made the following recommendations:

1. Defendants Garner, the City of Corinth, and Hutchinson's Motions to Dismiss, (Dkt. #109, #112, #113), should be granted, and Plaintiffs claims against such Defendants should be dismissed.

2. Defendants Hulse and Kirkwood's Motions to Dismiss, (Dkt. #110, #111), should be granted in part and denied in part.

3. Plaintiffs' Jurisdictional Motion, (Dkt. #134), should be denied.

Defendants Kirkwood and Hulse timely filed objections to the Report (the "Officers' Objections"). (Dkt. #154). Plaintiffs have filed a motion seeking leave to exceed the page limit for objections to the Report. (Dkt. #156). Plaintiffs also filed a "Motion to Move this Case Forward."[1] (Dkt. #165). After full consideration, the Court **SUSTAINS** the Officers' Objections and **ADOPTS in part** and **MODIFIES in part** the Report. The Court also **DENIES** Plaintiffs' motion for leave to file excess pages, **STRIKES** Plaintiffs' objections, **DENIES** Plaintiffs' Jurisdictional Motion, and **GRANTS** Plaintiffs' Motion to Move this Case Forward.

## I. BACKGROUND

The background of this case is set out in further detail by the magistrate judge in the Report and is not reproduced here in its entirety.

This case arises from an alleged domestic disturbance at Plaintiffs' home in Corinth, Texas, on September 13, 2018. (Dkt. #91 at 13). Plaintiffs allege that their neighbor, Defendant Joey Hutchinson, called 9-1-1 to report that Plaintiff Ronald Palmer was yelling at a woman that Hutchinson believed to be Mr. Palmer's wife, Plaintiff Sherry Palmer. (Dkt. #91 at 13). According to Plaintiffs, Hutchinson told the 9-1-1 operator that "no crime was occurring," "it was not physical," and "that the yelling had already ended," but that "he had a problem with The Home and [Plaintiffs] for years." (Dkt. #91 at 13). Plaintiffs also allege that Hutchinson "had for

[1] Plaintiffs' "Motion to Move this Case Forward", (Dkt. #165), requests that this Court act expeditiously to address the Report and pending motions. The Court grants that motion to the extent that it now resolves the Report and pending motions.

years been engaged in a harassment campaign" against Plaintiffs, repeatedly calling 9-1-1 on Plaintiffs before the September 2018 incident. (Dkt. #91 at 13–14).

On the day of the incident, City of Corinth police officers Defendants James Stephen Hulse and Derek William Kirkwood (the "Officers") were dispatched to Plaintiffs' home. (Dkt. #91 at 14). Plaintiffs claim the Officers parked their patrol car out of sight and entered the Plaintiffs' "curtilage." (Dkt. #91 at 15). The Officers approached Plaintiffs' front door and knocked. (Dkt. #91 at 15). Mr. Palmer opened the door and Officer Hulse requested that he step out of the house. (Dkt. #91 at 16). After Mr. Palmer complied with the request, Officer Hulse asked Mr. Palmer if he was armed. (Dkt. #91 at 16). Mr. Palmer responded that he was not armed, Officer Hulse requested to search Mr. Palmer for weapons, and Mr. Palmer refused. (Dkt. #91 at 16).

From this point, Plaintiffs' and the Officers' accounts of the incident begin to diverge. Plaintiffs allege that Officer Hulse attempted to forcibly search Mr. Palmer and that the Officers attempted to seize him. (Dkt. #91 at 16). Next, Plaintiffs claim that Mr. Palmer retreated into his home, and that the Officers "broke into The Home attempting to continue the unlawful seizure/arrest." (Dkt. #91 at 17). The Officers characterize the incident somewhat differently. According to the Corinth Police Department's incident report, Officer Hulse first asked Mr. Palmer to turn around for a search, but Mr. Palmer refused and "tried to go back inside and close the door." (Dkt. #91-1 at 5). Officer Hulse "was able to keep the front door from closing," and the

Officers followed Mr. Palmer into the home as Officer Hulse grabbed Mr. Palmer's hand in another attempt to frisk him. (Dkt. #91-1 at 5, 8).

Once inside the home, Plaintiffs allege that the "Officers continued their illegal violent assault and seizure" by handcuffing Mr. Palmer and using "excessive and deadly force" against him. (Dkt. #91 at 19). Plaintiffs claim that as Mr. Palmer was face down on the floor with his hands handcuffed behind his back, Officer Kirkwood pressed his knee into Mr. Palmer's back, impeding Mr. Palmer's ability to breathe, and pushed Mr. Palmer's face into the floor. (Dkt. #91 at 19). In contrast, the Officers assert that Mr. Palmer was handcuffed after he pulled away from Officer Hulse and pushed Officer Kirkwood, knocking Officer Kirkwood to the ground. (Dkt. #91-1 at 5, 8). The Officers also claim that Mr. Palmer actively resisted their attempts to restrain him by trying to pull his arms away. (Dkt. #91-1 at 5). Once on the ground, Mr. Palmer screamed "I can't breathe," which according to Officer Kirkwood, prompted him to release pressure on Mr. Palmer's back and monitor Mr. Palmer's breathing. (Dkt. #91-1 at 8).

Plaintiffs allege that the Officers then took Mr. Palmer outside the home, where Officer Hulse searched Mr. Palmer for weapons while Officer Kirkwood held Mr. Palmer's wrists "in a very painful position." (Dkt. #91 at 21). Plaintiffs allege that Mr. Palmer complained about his wrist pain, after which Officer Kirkwood twisted Mr. Palmer's wrists up his back, causing him to "scream at the top of his lungs in agony." (Dkt. #91 at 21). Plaintiffs also assert that Officer Kirkwood repeated this action until another officer stopped him. (Dkt. #91 at 21). The police reports attached

to Plaintiffs' complaint are silent as to the Officers' actions, if any, that were taken outside of the home, except for escorting and placing Mr. Palmer in a police vehicle. (Dkt. #91-1 at 5, 8).

After the incident, Mr. Palmer was indicted in state court for assault against a peace officer. (Dkt. #110-1); (Dkt. #91 at 5). Defendant Jerry Garner, Chief of Police for the City of Corinth, took office shortly after Mr. Palmer was indicted. (Dkt. #91 at 23). Plaintiffs allege they asked Chief Garner to investigate Mr. Palmer's arrest and indictment, and he responded that "his officers did nothing wrong." (Dkt. #91 at 23). Plaintiffs further allege that they submitted formal written complaints, which neither the City of Corinth nor the police department responded to. (Dkt. #91 at 23–24).

Having received no response to their written complaints, Plaintiffs filed this suit in September 2020. (Dkt. #1 at 1). Magistrate Judge Johnson entered proposed findings of facts and recommendations based on the initial complaint, (Dkt. #64, #65), which this Court adopted, (Dkt. #75). Thereafter, this Court granted Plaintiffs leave to file an amended complaint, (Dkt. #76), and a second amended complaint, (Dkt. #88). Plaintiffs filed their Second Amended Complaint, (Dkt. #91), in November 2021, alleging a multitude of claims under Section 1983 against Chief Garner, the City of Corinth, Hutchinson, Officer Kirkwood, and Officer Hulse, (Dkt. #91 at 5).

Defendants filed their respective motions to dismiss the Second Amended Complaint in December 2021. (Dkt. #109, #110, #111, #112, #113). Thereafter,

Magistrate Judge Johnson produced the Report, (Dkt. #153), recommending that the motions to dismiss filed by Chief Garner, the City of Corinth, and Hutchinson be granted in their entirety, (Dkt. #153 at 11, 14, 27), and the motions to dismiss filed by the Officers be granted except as to Plaintiffs' unlawful entry claim against Officers Hulse and Kirkwood, (Dkt. #153 at 18–19), and Plaintiffs' excessive force claim against Officer Kirkwood, specifically for Officer Kirkwood's activities after Mr. Palmer was brought outside, (Dkt. #153 at 24). The Report also recommends that Plaintiffs' Jurisdictional Motion be denied. (Dkt. #153 at 28–29). The Officers timely filed objections to the Report, (Dkt. #154), as did Plaintiffs, (Dkt. #157).

## II. Legal Standard

### A. Review of Magistrate Judge's Report and Recommendation

When a party objects to a magistrate judge's report and recommendation, the district court must review the contested portions de novo. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint when the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim

and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Under Federal Rule of Civil Procedure 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a plaintiff is not required to establish a favorable probability that the defendant is liable, the plausibility standard demands "more than a sheer possibility." *Id.*

In assessing a motion to dismiss under Rule 12(b)(6), the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (cleaned up). A plaintiff, however, must allege specific facts, not conclusory allegations. *See Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989). Conclusory allegations and unwarranted factual deductions will not suffice to prevent a motion to dismiss. *United States ex rel. Willard v. Humana Health Plan Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003); *see also Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (explaining that courts will not accept as true "conclusory allegations, unwarranted factual inferences, or legal

conclusions”). Thus, the court, drawing on its judicial experience and common sense, must undertake the “context-specific task” of determining whether the plaintiff’s allegations “nudge[]” their claims against the defendant “across the line from conceivable to plausible.” *Iqbal*, 556 U.S. at 679, 683 (internal citation omitted).

## III. Discussion

The Court adopts the Report’s recommendations as to Plaintiffs’ claims against Defendants Chief Garner, the City of Corinth, and Hutchinson, which are not contested by the Officers’ Objections and which the Court finds to be correct on de novo review. The Court, however, sustains the Officers’ Objections and modifies the Report as to the two remaining claims: Plaintiffs’ unlawful entry claim against both Officers and Plaintiffs’ excessive force claim against Officer Kirkwood. For the reasons that follow, the Court concludes that both claims must be dismissed.

### A. Qualified Immunity

The Officers have invoked the defense of qualified immunity. Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The doctrine protects “‘all but the plainly incompetent or those who knowingly violate the law.’” *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). As the Supreme Court has explained, “[q]ualified immunity balances two important interests—the need to hold public officials

accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. Courts will not deny immunity unless "existing precedent [has] placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011).

Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to plead specific facts to overcome the defense. *Terwilliger v. Reyna*, 4 F.4th 270, 284 (5th Cir. 2021). To defeat qualified immunity at the pleading stage, the plaintiff must allege facts showing that (1) the defendant violated the plaintiff's statutory or constitutional rights, and (2) the right was clearly established at the time of the alleged conduct. *Id.* Courts may exercise their discretion in deciding which prong to address first. *Pearson*, 555 U.S. at 236. However, the Supreme Court has increasingly indicated a preference for first considering whether the purported right was clearly established by prior case law "without resolving the often more difficult question whether the purported right exists at all." *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012). As the Court explained in *Camreta v. Greene*, "a court can often avoid ruling on the plaintiff's claim that a particular right exists. If prior case law has not clearly settled the right, and so given officials fair notice of it, the court can simply dismiss the claim for money damages." 563 U.S. 692, 705, 131 S.Ct. 2020, 179 L.Ed.2d 1118 (2011).

**B. The Officers' Entry into Plaintiffs' Home**

The Report concluded that the Officers are not entitled to qualified immunity on Plaintiffs' unlawful entry claim, relying principally on *Linicomn v. Hill*, 902 F.3d 529 (5th Cir. 2018), as clearly establishing that the Officers' warrantless entry into Plaintiffs' home violated the Fourth Amendment. The Court disagrees for two independent reasons.

First, *Linicomn* was decided too recently before the September 13, 2018, incident at Plaintiffs' home to constitute clearly established law at the time of the Officers' conduct. *Linicomn* was decided by the Fifth Circuit on September 5, 2018—just eight days before the Officers entered Plaintiffs' home. At the time of the incident, the deadline for the parties to file a petition for rehearing in *Linicomn* had not yet passed, and the Fifth Circuit's mandate in that case had not yet issued.[2] A decision that remains subject to rehearing and whose mandate has not been issued is not yet final. *Charpentier v. Ortco Contractors*, 480 F.3d 710, 713 (5th Cir. 2007) ("Before our mandate issues, we have the power to alter or modify our judgment. Accordingly, our decision is not final until we issue a mandate.") (footnote omitted). It cannot, therefore, be said to have "clearly established" the law for purposes of the qualified immunity analysis.

---

[2] The Fifth Circuit entered judgment in *Linicomn* on September 5, 2018. A petition for panel rehearing or rehearing en banc must be filed within fourteen days after judgment is entered. FED. R. APP. P. 41(d)(1). The Fifth Circuit's Internal Operating Procedure Rule 41 provides that mandates issues on the eighth day after the time for filing a petition for rehearing expires, or after entry of an order denying the petition. Therefore, the deadline to file a petition for rehearing in *Linicomn* was September 19, 2018, and the mandate issued on September 27, 2018.

The "clearly established" standard requires that "existing precedent" place the constitutional question "beyond debate." *al-Kidd*, 563 U.S. at 741. A plaintiff must identify "adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). "Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case." *Id.* (citation omitted). A non-final appellate decision—one that could still be modified, reversed, or reheard en banc—cannot place any constitutional question beyond debate. Further, it is implausible that the Officers would have been on notice of the Fifth Circuit's holding in *Linicomn* on September 13, 2018, when the decision had not yet become final and the losing party still retained the right to seek further review. For this reason alone, *Linicomn* cannot bear the weight the Report places on it.

Indeed, the Fifth Circuit's opinion in *Linicomn* is fatal to Plaintiffs' attempt to defeat the Officers' qualified immunity defense. The *Linicomn* court found that, as of September 2018, it was not clearly established that police officers' warrantless entry into a suspect's home violates the suspect's Fourth Amendment rights. *Linicomn*, 902 F.3d at 538 ("[W]e cannot conclude, under the second prong of the qualified immunity analysis, that this right was clearly established under the circumstances of this case at the time of the officers' entry."). Therefore, the Officers are entitled to qualified immunity on the unlawful entry claim.

Second, and independently, even if *Linicomn* had been final at the time of the incident, the factual circumstances here are materially distinguishable from those in *Linicomn* in a manner that defeats Plaintiffs' attempt to rely on that decision to clearly establish the law.

The clearly established inquiry must be undertaken "'in light of the specific context of the case, not as a broad general proposition.'" *Mullenix*, 577 U.S. at 12 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam)). "Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). It is the plaintiff's burden to identify a case that defines the law at the requisite "high degree of particularity." *See Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc) (citation omitted).

In *Linicomn*, officers responded to a 9-1-1 welfare call concerning children staying with their father, the plaintiff. 902 F.3d at 534. The call was made by the plaintiff's ex-wife and mother of the children, who reported a "disturbance" pertaining to the children at the plaintiff's residence. *Id.* Police arrived at the residence and the plaintiff's ex-wife told them that her daughter was "lethargic and sick" inside the home. *Id.* When police knocked on the plaintiff's door, he refused them entry and retreated into his home as officers followed. *Id.* The *Linicomn* court found the entry plausibly unlawful because the house was "relatively calm" when officers arrived and

there were no "external signs of struggle indicating the need to prevent violence or restore order." *Id.* at 537–38. Critically, however, *Linicomn* did not involve a suspect who was fleeing from a *Terry* stop.[3]

Here, the circumstances are meaningfully different. The Officers' entry into Plaintiffs' home was preceded by a *Terry* stop of Mr. Palmer on the front porch of his home.[4] During a *Terry* stop, an officer may conduct a pat-down search to determine whether the suspect is carrying a weapon if he reasonably believes the suspect may be armed. *United States v. Jenson*, 462 F.3d 399, 407 (5th Cir. 2006). Officer Hulse asked Mr. Palmer to submit to such a weapons frisk, which Mr. Palmer refused. Mr. Palmer then attempted to retreat into his home and close the door. The Officers followed. Under these circumstances—where a suspect flees from a lawful investigative detention and retreats into a residence—the legal landscape governing the Officers' conduct is not clearly established by *Linicomn*, which did not address this scenario.

Because *Linicomn* involved no such flight from a *Terry* stop, it cannot have placed the constitutional question in this case "beyond debate." *See Mullenix*, 577 U.S. at 12 (internal quotation omitted). Officers of reasonable competence could

[3] *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

[4] "To perform a *Terry* stop, officers must have 'reasonable suspicion that criminal activity may be afoot.'" *United States v. Wilson*, 143 F.4th 647, 659 (5th Cir. 2025) (quoting *Navarette v. California*, 572 U.S. 393, 401, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014)). Reasonable suspicion requires only "some minimal level of objective justification for making the stop." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quotation omitted). A 9-1-1 call can lead to a reasonable suspicion by police officers of criminal activity that would justify an investigatory stop. *United States v. Rose*, 48 F.4th 297, 302 (5th Cir. 2022).

disagree about whether the Fourth Amendment permitted entry under these specific facts. *See Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005). The Officers are therefore entitled to qualified immunity on the unlawful entry claim on this independent ground as well.

Because the Court resolves the unlawful entry claim in the Officers' favor on the "clearly established" prong of the qualified immunity analysis, the Court need not and does not decide whether the Officers' entry into Plaintiffs' home in fact violated the Fourth Amendment. *See Camreta*, 563 U.S. at 705; *Reichle*, 566 U.S. at 664.

**C. Excessive Force**

The Report recommended that Plaintiffs' excessive force claim against Officer Kirkwood—based on the alleged twisting of Mr. Palmer's wrists outside the home after he had been handcuffed—survive dismissal. (Dkt. #153 at 24–25). The Officers do not object to this recommendation. Nevertheless, the Court, reviewing the Report de novo, disagrees.

To state a claim for excessive force under the Fourth Amendment, a plaintiff must allege facts showing: (1) an injury; (2) that resulted directly and only from a use of force that was clearly excessive; and (3) the force used was objectively unreasonable. *Linicomn*, 902 F.3d at 539 (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)). "To succeed on an excessive force claim, [a plaintiff] must demonstrate that he suffered at least some form of injury from the defendant's actions that is more than de minimis." *Aguilar v. Robertson*, 512 F.App'x 444, 449

(5th Cir. 2013) (per curiam) (quotation omitted); *accord Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).

Plaintiffs allege that after Mr. Palmer was handcuffed and led outside the home, Officer Kirkwood held Mr. Palmer's wrists "in a very painful position" while Officer Hulse conducted a weapons search. (Dkt. #91 at 21). Plaintiffs further allege that when Mr. Palmer complained about the pain in his wrists, Officer Kirkwood "twisted [Mr. Palmer's] wrists up behind his back, causing him to scream in agony," and that Officer Kirkwood repeated this action until another officer intervened. (Dkt. #91 at 21). The Report concluded that these allegations were sufficient to state a plausible excessive force claim against Officer Kirkwood. The Court disagrees.

Plaintiffs' excessive force claim against Officer Kirkwood fails because Mr. Palmer has not alleged injuries rising above the threshold required to sustain a Fourth Amendment excessive force claim.

The Fifth Circuit has consistently held that minor injuries associated with the application and use of handcuffs do not give rise to a constitutional claim for excessive force. *Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 300 F. Supp. 3d 857, 892 (N.D. Tex. 2018) ("[m]inor, incidental injuries that occur in connection with the use of handcuffs . . . do not give rise to a constitutional claim for excessive force"); *see also Glenn*, 242 F.3d at 314 (concluding that "handcuffing too tightly, without more, does not amount to excessive force").

In *Freeman v. Gore*, the Fifth Circuit found no excessive force where deputies twisted an arrestee's arms behind her back, "jerked her all over the carport," and

applied handcuffs too tightly, causing bruises and marks on her wrist. 483 F.3d 404, 416–17 (5th Cir. 2007). The court reasoned that such injuries were "minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest" and therefore did not "give rise to a constitutional claim for excessive force." *Id*. Similarly, in *Tarver v. City of Edna*, the Fifth Circuit found no excessive force when the plaintiff failed to allege any degree of physical harm greater than *de minimis*—specifically "'acute contusions of the wrist' and psychological injury from being handcuffed." 410 F.3d at 751–52.

Plaintiffs' allegations here are similar to those found insufficient in *Freeman* and *Tarver*. Plaintiffs allege that Officer Kirkwood twisted Mr. Palmer's already handcuffed wrists behind his back, causing wrist pain and causing Mr. Palmer to scream. (Dkt. #91 at 21). But Plaintiffs do not allege that Mr. Palmer received any medical treatment for his wrist injuries, that he sustained any lasting or significant physical injury to his wrists, or that he suffered any diagnosed physical condition as a result of Officer Kirkwood's conduct. The allegations amount to complaints of pain and discomfort associated with the manner in which Mr. Palmer was restrained—precisely the type of *de minimis* injury the Fifth Circuit has repeatedly found insufficient to support an excessive force claim.

Plaintiffs also fail to allege any substantial psychological injury tied to Officer Kirkwood's conduct outside the home. "Only substantial psychological injuries are sufficient to meet the injury element of a claim for excessive force under the Fourth Amendment." *Carter v. Diamond URS Huntsville, LLC*, No. H–14–2776, 2016 WL

8711499, at *5 (S.D. Tex. Sept. 30, 2016) (citing *Flores v. City of Palacios*, 381 F.3d 391, 397–98 (5th Cir. 2004)). Plaintiffs allege no such injury.

This Court's decision in *Brown v. Coulston* is instructive. There, the Court found allegations of "severe, lasting pain" and "lasting psychological injuries" insufficient to state more than *de minimis* injury where the plaintiff provided no specific facts to support the conclusion that he incurred any significant or lasting physical injury. 463 F.Supp.3d 762, 780 (E.D. Tex. 2020). The same reasoning applies here. Mr. Palmer's conclusory allegations of wrist pain, without any factual support indicating the severity, duration, or lasting nature of his injuries, are insufficient to allege anything more than *de minimis* injury. *See id.*

The cases that the magistrate judge relies on in her Report are inapposite. The Report cites *Joseph on behalf of Est. of Joseph v. Bartlett* for the proposition that "violent force is excessive when used against a suspect who is not resisting arrest." (Dkt. #153 at 25) (citing 981 F.3d 319, 342 (5th Cir. 2020)). However, the police officers in *Joseph* repeatedly kicked, punched, tased, and beat a suspect with a baton while he was restrained on the ground. 981 F.3d at 326–327. The suspect ultimately "endured twenty-six blunt-force injuries to his face, chest, back, extremities, scrotum, and testes" and died from his injuries two days after the incident. *Id.* at 327. Clearly the force used on the suspect in *Joseph* far exceeded that which Plaintiffs allege Officer Kirkwood used against Mr. Palmer. The Report also relies on *Buehler v. Dear*, where the Fifth Circuit held that as "long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove

cognizable when resulting from an officer's unreasonably excessive force." (Dkt. #153 at 25) (citing 27 F.4th 969, 982 (5th Cir. 2022)). But the Report fails to address the outcome of *Buehler*, where the Fifth Circuit found that the plaintiff's injuries consisting of "bruising and pain" were *de minimis* for the purposes of the excessive force analysis. 27 F.4th at 983.

Because Plaintiffs have failed to allege injuries rising above the *de minimis* threshold, their excessive force claim against Officer Kirkwood must be dismissed.

* * *

In sum, the Court sustains the Officers' Objections and modifies the Report to grant dismissal of Plaintiffs' claims against all Defendants with prejudice.

**D. Plaintiffs' Objections**

**i. Motion for Leave to File Excess Pages**

Plaintiffs have filed a motion requesting leave to file objections to the Report that total 122 pages. (Dkt. #156). Defendants oppose the motion. (Dkt. #158). The motion is denied, and Plaintiffs' objections are stricken.

Local Rule CV-72(c) requires that objections to a magistrate judge's report and recommendation not exceed eight pages without leave of court. Plaintiffs' proposed objections exceed that limit by more than 100 pages. Plaintiffs offer several justifications for this extraordinary excess, none of which is persuasive.

Plaintiffs first argue that the Report consolidated six motions and that they are therefore entitled to additional pages to address each motion. But consolidation of related motions is a routine and efficient practice that benefits all parties, including

Plaintiffs. Plaintiffs acknowledge as much, noting that their consolidated response "reduces the Court's reading requirements by half." (Dkt. #156 at 2). Having benefited from consolidation, Plaintiffs cannot now use it as a basis to demand fifteen times the permitted page allotment.

Plaintiffs next argue that fourteen days was insufficient time to refine their objections to comply with the applicable page limit and that they were unaware of which rule governed the word count for their response. (Dkt. #156 at 3). *Pro se* litigants are not exempt from compliance with the Court's local rules. *See Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law."). The applicable page limits are readily available on the Court's website and in the Local Rules, and ignorance of those limits does not constitute good cause for exceeding them by more than 100 pages.

Finally, Plaintiffs contend that the magistrate judge lacked jurisdiction to rule on the motion because she was required to recuse herself under 28 U.S.C. § 455. (Dkt. #156 at 4). This argument is frivolous. Plaintiffs have presented no credible basis for recusal, and a litigant's disagreement with a magistrate judge's rulings does not establish the kind of pecuniary interest or bias required by Section 455. *See Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."). In any event, this Court, not the magistrate judge, rules on Plaintiffs' motion here.

Because Plaintiffs have failed to demonstrate good cause for their extraordinary departure from the Court's page limits, the motion for leave is denied and Plaintiffs' objections, (Dkt. #157), are stricken. Even if the Court were to consider the objections, however, they would be overruled for the reasons set forth in this Order.

**ii. Tone and Content of Plaintiffs' Objections**

The Court writes separately to address the tone and content of Plaintiffs' stricken objections. The Court has reviewed the objections and is compelled to address the improper and threatening language contained therein.

Federal courts have inherent authority to regulate the conduct of litigants appearing before them and to require that all filings maintain a level of civility and respect appropriate to judicial proceedings. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–44, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). This obligation applies with equal force to *pro se* litigants. *See Birl*, 660 F.2d at 593. Plaintiffs' objections fall far short of this standard.

Throughout their objections, Plaintiffs have leveled a sustained barrage of hyperbolic, contemptuous, and deeply offensive attacks against Magistrate Judge Johnson, this Court, Defendants, and the American judicial system as a whole. The Court will not dignify each of these statements with a detailed response, but several examples illustrate the breadth and severity of Plaintiffs' misconduct.

Plaintiffs have characterized the magistrate judge's Report as "an arbitrary tyrannical edict from a despotic tyrant," accused the magistrate judge of

"incompetence" and "intentional bias," and compared the magistrate judge's reasoning to that of Joseph Stalin and the Gestapo. (Dkt. #157 at 2, 13, 16, 113). Plaintiffs have accused this Court of "feed[ing] crime and promot[ing] crime," "erod[ing] the very foundations of a free country," and exercising "dictatorial terroristic power." (Dkt. #157 at 23, 60, 101). Plaintiffs have accused Defendants of participating in an "open conspiracy" with the federal courts and have characterized the relationship between law enforcement and the district attorney as "corrupt and incestuous." (Dkt. #157 at 22, 99).

Most troublingly, Plaintiffs' objections contain language that this Court construes as implicit threats directed at the Court and the judicial system. Plaintiffs have written: "This Court should pay attention to what will happen to Putin. Sic Semper Tyrannus [sic]." (Dkt. #157 at 23). Plaintiffs have also written: "From Mr. Palmer's perspective, unless you choose to murder me and can pull it off, I will be fighting this fight to the very end all the way to the top with everything I have in me. . . . I have very little left to lose, a lot to say on this particular subject, and I don't fear death. Let's make history together." (Dkt. #157 at 30). And Plaintiffs have stated that Mr. Palmer "is NOT someone who is going to back down or be scared away by cowards with badges or by biased federal judges." (Dkt. #157 at 119).

The Court understands that *pro se* litigants may feel frustrated by adverse rulings and may lack familiarity with the conventions of legal practice. The Court further acknowledges Mr. Palmer's statement that his military background informs his direct manner of expression and that his anger at the outcome of this litigation is

genuine. (Dkt. #156 at 4). These circumstances, while noted, do not excuse the conduct reflected in Plaintiffs' objections. Disagreement with a court's rulings—however deeply felt—does not justify accusing a federal magistrate judge of corruption, tyranny, and complicity in torture, nor does it justify language that can reasonably be read as threatening toward the Court.

Such language has no place in federal court filings. It does not advance Plaintiffs' legal arguments. It does not assist the Court in resolving the issues before it. And it undermines the dignity and integrity of the judicial proceedings to which all parties are entitled.

The Court therefore admonishes Plaintiffs in the strongest possible terms. Plaintiffs are warned that any future filing in this Court that contains language of this nature—including personal attacks on judicial officers, accusations of corruption or criminal conduct without factual or legal basis, hyperbolic comparisons to historical dictators or authoritarian regimes, or language that can reasonably be construed as threatening—will be stricken from the record immediately upon filing. Furthermore, such conduct will result in the imposition of sanctions, which may include monetary penalties, filing restrictions, and a finding that Plaintiffs are in contempt of court. *See* 18 U.S.C. §§ 401, 1927; FED. R. CIV. P. 11; *Chambers*, 501 U.S. at 43–44.

## IV. CONCLUSION

For the foregoing reasons, the Officers' Objections to the Report and Recommendation, (Dkt. #154), are **SUSTAINED**. The Report and Recommendation,

(Dkt. #153), is **ADOPTED in part** as to its recommendations to dismiss all claims against Defendants Chief Garner, the City of Corinth, and Hutchinson, and **MODIFIED in part** to also dismiss Plaintiffs' unlawful entry claim against both Officers and Plaintiffs' excessive force claim against Officer Kirkwood.

It is therefore **ORDERED** that the Motions to Dismiss filed by Defendants Chief Garner, the City of Corinth, and Hutchinson, (Dkt. #109, #112, #113), are **GRANTED**.

It is further **ORDERED** that the Motions to Dismiss filed by Officers Hulse and Kirkwood, (Dkt. #110, #111), are **GRANTED**.

It is further **ORDERED** that Plaintiffs' Jurisdictional Motion, (Dkt. #134), is **DENIED**.

It is further **ORDERED** that Plaintiffs' motion for leave to file excess pages, (Dkt. #156), is **DENIED** and Plaintiffs' objections, (Dkt. #157), are **STRICKEN**.

It is further **ORDERED** that Plaintiffs' Motion to Move this Case Forward, (Dkt. #165), is **GRANTED**.

It is further **ORDERED** that Plaintiffs' case is **DISMISSED with prejudice** pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

**So ORDERED and SIGNED this 21st day of August, 2026.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE